UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY J. TRIGUEIRO, an individual, and LINDA S. TRIGUEIRO, an individual,

Plaintiffs,

v.

BANK OF AMERICA, N.A.,  a national banking association and the successor in interest to BACK Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP; NATIONSTAR MORTGAGE LLC,  a business entity; U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO WACHOVIA BANK, N.A., AS TRUSTEE FOR THE CERTIFICATE-HOLDERS OF BANK OF AMERICA FUNDING CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-F, a business entity; SAGE POINT LENDER SERVICES, LLC,  a business entity; and DOES 1-50, inclusive,

Defendants.

No.  2:14-cv-02556-MCE-EFB

**MEMORANDUM AND ORDER**

Through the present action, Plaintiffs Larry J. Trigueiro and Linda S. Trigueiro ("Plaintiffs") seek redress from various entities servicing the mortgage on their home located at 2920 Butte Meadows Court, Yuba City, California ("the subject property"). Plaintiffs claim a variety of improprieties in the servicing of their mortgage and the subsequent commencement of foreclosure proceedings on the subject property. Presently before the Court are two motions to dismiss. The first Motion to Dismiss, made on behalf of Defendant Bank of America, N.A. ("BANA"), asserts that Plaintiffs' Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] because it fails to state a claim upon which relief can be granted. BANA further argues that the Complaint fails to plead fraud with the particularity required by Rule 9(b). The second Motion to Dismiss is made by the remaining Defendants[2] with the exception of Sage Point Lender Services, LLC. As set forth below, BANA's Motion to Dismiss is GRANTED in part and DENIED in part and the second Motion to Dismiss is GRANTED.[3]

## BACKGROUND[4]

Plaintiffs purchased the subject property on June 28, 2005, after obtaining financing in the amount of $280,000 from BANA. In order to effectuate the purchase, Plaintiffs executed both a Promissory Note and Deed of Trust. In January of 2011, after Larry Trigueiro lost his job, Plaintiffs called BANA to request mortgage assistance on their home loan. Specifically, they inquired as to whether they could make partial

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Those Defendants include Nationwide Mortgage LLC ("Nationstar"), as well as U.S. Bank, N.A., as Trustee ("U.S. Bank").

[3] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[4] This factual background is drawn directly from the allegations contained in Plaintiffs' Complaint (ECF No. 1).

payments for a period of one year until Larry Trigueiro was reemployed.  Plaintiffs claimed they were told that BANA was unable to make such an arrangement as it was only the loan servicer and not the investor on their mortgage.  Nonetheless, Plaintiffs allege that about a month later, on February 18, 2011, they received a letter from BANA inviting them to apply for a loan modification with BANA in order to avoid foreclosure. Plaintiffs claim that they were still current on their loan and had made every payment since the loan originated in 2005.

Later in February of 2011, Plaintiffs claimed they spoke with an authorized representative of BANA that identified himself as "Eloy."  Eloy told Plaintiffs that the easiest way for Plaintiffs to get mortgage assistance would be to miss monthly payments on their loans.  Plaintiffs allegedly responded that they did not want to default and instead simply wanted help in meeting their mortgage obligations.  According to Plaintiffs, Eloy told that that by defaulting on the loan Plaintiffs would show the investor that they truly needed mortgage assistance.

Not wanting to default, Plaintiffs used a credit card to make their monthly mortgage statements for a time, until the credit card payments themselves became intolerable.  Subsequently, on or about May 31, 2011, Plaintiffs called BANA to request a loan modification.  BANA's authorized representative from the Hardship Modification Department, an individual who identified himself as "Matt," informed Plaintiffs that a loan modification was available for Plaintiffs loan.  Again, however, Plaintiffs were told they had to be delinquent on their loan in order to obtain modification.  Plaintiffs claim they were "specifically instructed to default on their monthly mortgage payments in order to qualify for the loan modification" and followed that directive in order to qualify for assistance.  Compl., ECF No. 1, at 5:4-7.

Once Plaintiffs withheld their monthly mortgage payments, they state they were contacted by a BANA representative named Brenda Weathers.  Ms. Weathers reiterated that modification was an available option for Plaintiffs and told them she would send a loan modification review package.  She allegedly provided "detailed instruction as to how

3

1   this package should be completed and advised Plaintiffs that if they followed BANA's

2   instructions and completed the package as requested, Plaintiffs would receive a loan

3   modification." Id. at 5:12-14.

4          Between May 2011 and October 2012, Plaintiffs state they were in an active loan

5   modification review with BANA.  During that period, they claim they were continuously

6   asked to submit and re-submit numerous documents and financial information, and aver

7   that they complied with BANA's requests in that regard.  Then, on October 29, 2012,

8   Plaintiffs received a letter from BANA's Home Loan Team that stated in pertinent part:

9                   You are not eligible for a Home Affordable Modification
                    because we service your loan on behalf of an investor or
10                  group of investors that has not given us the contractual
                    authority to modify your loan under the Home Affordable
11                  Modification Program.

12   Id. at 5:21-25.

13         After receiving the letter, Plaintiffs called BANA and again spoke to Brenda

14   Weathers.  She told them that despite the contents of the October 29, 2012 letter, their

15   loan could in fact be modified and that they should continue to seek modification through

16   BANA.  Shortly thereafter, Plaintiffs received another letter from Ms. Weathers

17   requesting additional documents, which Plaintiffs provided.  By additional

18   correspondence on or around October 31, 2012, Weathers told Plaintiffs that once

19   BANA's loan modification review was completed, BANA would contact them about the

20   type of assistance they qualified for.  On November 5, 2012, Ms. Weathers assured

21   Plaintiffs that no additional documents were required.  However, on November 30, 2012,

22   Plaintiffs received a letter from another member of BANA's Home Loan Team, Richard

23   Bryant, stating that Plaintiffs needed to fax more documentation

24         On January 3, 2013, Plaintiffs received a letter from Mr. Bryant that was nearly

25   identical to BANA's previous correspondence of October 29, 2012.  Mr. Bryant's letter

26   advised Plaintiffs that they were not eligible for loan modification because BANA lacked

27   the contractual authority to modify Plaintiffs' loan.  By this time, Plaintiffs were

28   substantially behind on their mortgage payments.  Less than a week later, on January 8,

4

1  2013, BANA recorded an Assignment of Deed of Trust assigning all beneficial interest

2  under the subject Deed of Trust to Defendant U.S. Bank.   BANA remained the loan

3  servicer.

4        After applying for another mortgage assistance program administered by Keep

5  Your Home California, Plaintiffs claim they were told they were conditionally eligible for

6  assistance of up to $25,000 but needed consent from the subject property's loan

7  servicer, BANA, to proceed.  Despite the two previous rejections they received, Plaintiffs

8  claim they were told to resubmit yet another loan modification application to BANA since

9  it would not consent to any potential assistance from Keep Your Home California.

10  Plaintiffs submitted that application to BANA  in June of 2013.

11        On or about October 17, 2013, Plaintiffs received a letter from BANA advising

12  them that their loan was in foreclosure and that they had until October 31, 2013, to

13  reinstate the loan by paying $27,706.20 to BANA.  Then, on or about November 1, 2013,

14  Defendant transferred its servicing of Plaintiffs' loan to Defendant Nationstar, with

15  Nationstar thereby acquiring all servicing rights and beneficial interest in the subject

16  property.  Although Nationstar caused a Notice of Trustee's Sale to be recorded on the

17  subject property, on or about November 8, 2013, Nationstar representative Jen Hansen

18  asked Plaintiffs to submit a new loan modification.  That modification was ultimately

19  denied on February 26, 2014, and Plaintiffs' property was placed back into active

20  foreclosure, with responsibility for the foreclosure process being assigned to Defendant

21  Sage Point.  On or about April 19, 2014, Plaintiffs were told by letter from Nationstar that

22  their indebtedness on the subject property had increased to $42,815.26.

23        On September 8, 2014, Plaintiffs commenced this action in state court.  It was

24  later removed by BANA to this Court.  See Notice of Removal, ECF No. 1.

25  ///

26  ///

27  ///

28  ///

5

**STANDARD**

### A.  Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

1   claims across the line from conceivable to plausible, their complaint must be dismissed."

2   Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

3   that actual proof of those facts is improbable, and 'that a recovery is very remote and

4   unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

5        A court granting a motion to dismiss a complaint must then decide whether to

6   grant leave to amend.  Leave to amend should be "freely given" where there is no

7   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

8   to the opposing party by virtue of allowance of the amendment, [or] futility of the

9   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

10  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

11  be considered when deciding whether to grant leave to amend).  Not all of these factors

12  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

13  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

14  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

15  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

16  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

17  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

18  1989) ("Leave need not be granted where the amendment of the complaint . . .

19  constitutes an exercise in futility . . . .")).

20       **B.  Rule 9(b)**

21       A plaintiff must plead allegations of fraud and those that "sound in fraud" with

22  particularity.  Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097,

23  1103-05 (9th Cir. 2003).  Conclusory allegations of fraud are insufficient.  Moore v.

24  Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

25       A pleading satisfies Rule 9(b) when it is "specific enough to give defendants

26  notice of the particular misconduct. . . . so that they can defend against the charge and

27  not just deny that they have done anything wrong."  Vess, 317 F.3d at 1106 (internal

28  quotation marks and citation omitted); accord Moore, 885 F.2d at 540 ("A pleading is

sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.").  As a result, the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud.  Vess, 317 F.3d at 1106 (internal quotation marks and citations omitted).  Further, if the plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

Despite this heightened standard, the Ninth Circuit has opined that courts "cannot make Rule (b) carry more weight than it was meant to bear."  Cooper  v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997); see also Schlagal v. Learning Tree Int'l., 1998 WL 1144581 at *8 (C.D. Cal. Dec 23, 1998) ("The Court must strike a careful balance between insistence on compliance with demanding pleading standards and ensuring that valid grievances survive.")  Instead, Rule 9(b) "must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim."  Baas v. Dollar Tree Stores, No. C 07-03108 JSW, 2007 WL 2462150, at *2 (N.D. Cal. Aug. 29, 2007).

**ANALYSIS**

### A.  Fraud-Based Claims

Plaintiffs' Complaint includes two fraud-based claims, one for common law fraud and the other for negligent misrepresentation.  Both claims share similar prerequisites.  To state a cause of action for fraud, Plaintiffs must show (1) a misrepresentation or concealment of a material fact; (2) knowledge of its falsity or lack of reasonable ground for belief in the truth of the representation; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.  OCM Principal Opportunities Fund, L.P., 157 Cal. App. 4th 835, 845 (2007).  Negligent misrepresentation is a variant of fraud that entails the assertion of a fact that is not true by one who has no reasonable grounds for believing it to be true.  Cal. Civ. Code § 1709, 1710.  Fraud differs from negligent

1   misrepresentation only insofar as negligent misrepresentation does not carry a

2   requirement of intent to induce reliance, or a requirement that the defendant actually

3   know the representation is false.  See Cadlo v. Owens-Illinois, Inc., 125 Cal. App. 4th

4   513, 519 (2014); Neilson v. Union Bank of Calif., N.A., 290 F. Supp. 2d 1101, 1141 (C.D.

5   Cal. 2003).   Additionally, as BANA points out, as claims sounding in fraud both causes

6   of action must meet Rule 9(b)'s particularity requirements.  Neilson, 290 F. Supp. 2d at

7   1141.  In moving to dismiss, BANA asserts that Plaintiffs have not pled fraud with the

8   requisite specificity as to just what representations were made, the manner in which they

9   were false or misleading, and when, where, and to whom they were made.  BANA's Mot.

10  at 4:14-20 (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531, 539 (9th Cir.

11  1989)).

12          BANA is correct that conclusory allegations of fraud are insufficient.  See Moore,

13  885 F.2d at 540.  The Court nonetheless believes that Plaintiffs' allegations here pass

14  muster under Rule 9(b).  Plaintiffs have identified the various BANA representatives by

15  name ("Eloy," "Matt," Brenda Weathers, and Richard Bryant), and have set forth either

16  the exact date or an approximation of when these individuals represented that mortgage

17  assistance was available through BANA.  "Eloy" and "Matt" further instructed Plaintiffs

18  that they needed to be in default on their loan in order to qualify for modification relief

19  and advised them to miss payments in order to do that.  And while initially reluctant,

20  Plaintiffs ultimately quit remitting their monthly payments as instructed.   Plaintiffs go so

21  far as to represent that Ms. Weathers told them that if they completed the loan

22  modification package as she directed, "Plaintiffs would receive a loan modification."

23  Compl. at 5:12-14.  These representations continued even after BANA informed

24  Plaintiffs by letter that they lacked the contractual authority to modify Plaintiff's loan.

25  Thereafter, despite making multiple requests for more documentation regarding

26  Plaintiff's modification application, BANA again told Plaintiffs that it lacked the

27  contractual authority to modify Plaintiff's loan.  In addition, Plaintiffs allege that BANA

28  prevented them from seeking mortgage assistance through Keep Your Home California,

1   instead telling them to resubmit a loan modification request to BANA.   Despite Plaintiffs'

2   compliance, BANA informed Plaintiff some months later that the subject property was in

3   foreclosure.  Taken as a whole, these allegations are more than sufficient to satisfy even

4   the heightened pleading requirements applicable to fraud claims.

5          BANA also takes issue with whether Plaintiffs' reliance on the loan modification

6   program they offered was justifiable.  BANA first cites Pacini v. Wells Fargo Bank, N.A.,

7   No. 12-014605 RS, 2012 U.S. Dist. LEXIS 183151, at *9 (N.D. Cal. Dec. 26, 2012) for

8   the proposition that any claim that Plaintiffs were induced to default on their monthly

9   payments in order to obtain loan modification assistance is "implausible as a matter of

10   law."  Second, BANA contends that the outcome of any loan modification review is

11   inherently uncertain, and that consequently it was unreasonable for plaintiffs to rely on

12   BANA's representations and change their position based on the prospect of a hoped-for

13   loan modification.

14          Again, the Court is unpersuaded.   Pacini and the case it relied upon, Ortiz v.

15   America's Servicing Co., No. EDCV 12-191 CAS (SPx), 2012 WL 2160953 (C.D. Cal.

16   June 11, 2012), based their conclusions on a finding that that any reasonable reliance

17   was undermined by the borrowers' unquestioned inability to satisfy their mortgage

18   obligation at the time the fraudulent representations were allegedly made.  The present

19   case is distinguishable because, according to their Complaint, Plaintiffs had remained

20   current on their payments at the time the representations were made and had used their

21   credit card to keep the account current.  According to Plaintiffs, they had never missed a

22   mortgage payment until they "followed BANA's directives and withheld their monthly

23   mortgage payments in order to qualify for the loan modification program" as two Wells

24   Fargo representatives, "Eloy" and "Matt," had told them to do.  See Compl., ¶¶ 12-14.

25   Additionally, except in rare cases where the undisputed facts leave no room for a

26   contrary conclusion, "the question of whether a plaintiff's reliance is reasonable is a

27   question of fact."  Blankenheim v. E. F. Hutton & Co., 217 Cal. App. 3d 1463, 1475

28   (1980).  It would be improper for this Court to resolve such an issue on the pleadings.

1    Finally, contrary to BANA's argument, Plaintiffs have alleged adequate damages

2    stemming from BANA's alleged fraud to survive a motion to dismiss.  While BANA

3    alleges it was Plaintiffs' own failure to pay their mortgage which caused the subject

4    property to go into foreclosure, as stated above, Plaintiffs claim they were induced by

5    BANA's representations to stop paying at a point when they had been current on their

6    mortgage beforehand.  In addition, aside from damages related to any foreclosure sale

7    (which may not have occurred), Plaintiffs claim a myriad of other actual damages,

8    including destruction of credit and costs and fees incurred to save their home.  See

9    Compl., ¶ 49.  This is more than to survive pleading scrutiny.

10    Accordingly, Plaintiffs' fraud claims against BANA survive this Motion to Dismiss.

11    **B.  Negligence**

12    A viable negligence claim entails the following elements: "(1) a legal duty to use

13    reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the

14    breach and (4) the plaintiff's injury."  Mendoza v. City of L.A., 66 Cal. App. 4th 1333,

15    1339 (1998).  Whether an actionable duty of care is present becomes the threshold

16    inquiry in assessing any negligence claim.  Bily v. Arthur Young & Co., 3 Cal. 4th 370,

17    397 (1992).

18    BANA moves to dismiss Plaintiffs' claim for negligence on grounds that Plaintiffs

19    have failed to adequately plead the existence of a duty of care.  In arguing that no such

20    duty is present here, BANA cites the general rule that a lender does not owe a duty of

21    care to a borrower, and argues the general handling of a loan application does not justify

22    a departure from that general rule.  See Nymark v. Heart Fed. Sav. & Loan Ass'n,

23    231 Cal. App. 3d 1089, 1093 (1991).  Insofar as loan modification constitutes a

24    renegotiation of loan terms, it "falls squarely within the scope of a lending institution's

25    conventional role as a lender of money."  Lueras v. BAC Home Loans Servicing, LP,

26    221 Cal. App. 4th 49, 67 (2013).  BANA argues that its loan modification activities in this

27    case qualify under this standard.

28    ///

11

1    Although it is correct that a lender owes no duty of care to offer, consider, or

2    approve a loan modification request, see id. at 68, there is authority that once it agrees

3    to consider a modification, it owes the potential borrower a duty to exercise reasonable

4    care in its review of a loan modification application.  Alvarez v. BAC Home Loans

5    Servicing, L.P., 228 Cal. App. 4th 941, 948 (2014).  As Alvarez recognized, the factors

6    employed in considering whether a duty exists "clearly weigh in favor of a duty" since it is

7    "entirely foreseeable that failure to timely and carefully process the loan modification

8    application could result in significant harm . . . ."  Id.   While there are cases cited by

9    Plaintiff that appear to conclude otherwise, those cases primarily relate to the decision to

10   offer, consider, or approve a modification rather than the lender's conduct in undertaking

11   the process itself.  See Lueras, 221 Cal. App. 4th at 67; see also Diunugala v. JP

12   Morgan Chase Bank, N.A., No. 12cv2106-WQH-NLS, 2013 WL 5568737, at *14 (S.D.

13   Cal. Oct. 3, 2013) ("Absent special circumstances, there is no duty for a servicer to

14   modify a loan.").  At any rate, the Court is more persuaded by the logic employed by

15   Alvarez and finds that under the particular circumstances of this case, the requisite duty

16   is present.

17         According to Plaintiffs' Complaint, BANA's loan modification process went on for

18   two-and-a-half years, during which time BANA representatives repeatedly told Plaintiffs

19   that they should pursue modification.  At least one representative, Brenda Weathers, told

20   Plaintiffs they would qualify for a modification if they followed BANA's instructions and

21   completed the loan modification package as requested.  The Court concludes that such

22   representations fall outside a loan's servicer's conventional role in offering, considering,

23   or approving a loan modification and are thus sufficient to support the existence of a duty

24   of care in this matter.

25         **C.  Intentional Infliction of Emotional Distress**

26         In order to state a legally cognizable claim for intentional infliction of emotional

27   distress ("IIED"),  a plaintiff must identify facts demonstrating that "(1) the defendant

28   engaged in extreme and outrageous conduct with the intention of causing, or reckless

1   disregard of the probability of causing, sever emotional distress to the plaintiff; (2) the

2   plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous

3   conduct was the actual and proximate cause of the emotional distress." Ross v. Creel

4   Printing & Publ'g Co., 100 Cal. App. 4th 736, 744-45 (2002).   The conduct at issue

5   "must be so extreme as to exceed all bounds of that usually tolerated in a civilized

6   society."  Trerice v. Blue Cross of Cal., 209 Cal. App. 3d 878, 883 (1989).

7          BANA's challenge to Plaintiffs' IIED claim is premised on an argument that a

8   mortgage-related dispute is founded on "purely economic activity" that cannot, as a

9   matter of law, give rise to severe emotional distress.  Montgomery v. PNC Bank, N.A.,

10  2012 WL 3670650 at *6 n.6 (N.D. Cal. Aug. 24, 2012).  One court in this district has also

11  found that the loan modification process and "the act of foreclosing on a home (absent

12  other circumstances) is not the kind of extreme conduct that supports an intentional

13  infliction of emotional distress claim."  See Quinteros v. Aurora Loan Servs.,

14  740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010).

15         In opposition, Plaintiffs cite Ragland v. U.S. Bank Nat'l Assn., 209 Cal. App. 4th

16  182 (2012) for the proposition that "whether conduct is outrageous is usually a question

17  of fact" that would not be amenable to adjudication on a motion to dismiss.  Id. at 204.  In

18  Ragland, however, the plaintiff alleged not only that he was induced to skip a loan

19  payment, but that the defendant subsequently refused to accept any loan payments,

20  sold plaintiff's house in violation of California law, and therefore did not have the right to

21  foreclose in the first place.  The court found that defendant's conduct was outrageous

22  under those particular facts.

23         The same level of egregiousness is simply not present here.  However misguided

24  or incorrect BANA's advice may have been, especially with respect to the fact that its

25  representatives allegedly encouraged Plaintiffs to continue to apply for loan modification

26  relief even after BANA had sent Plaintiffs a letter informing them that it lacked the

27  authority to modify, the facts as currently alleged by Plaintiffs simply do not rise to the

28  level of outrageous conduct entitling them to seek damages under an IIED claim.

13

1  Consequently, BANA's dismissal request as to the Fourth Cause of Action is granted

2  with leave to amend.

3        **D.  Wrongful Foreclosure**

4        Plaintiffs' Fifth Cause of Action for wrongful foreclosure alleges that BANA's

5  conduct violated the wrongful foreclosure provisions set forth in California Civil Code

6  §§ 2924-2924k by engineering a default through misrepresenting the loan modification

7  process and not disclosing the nature of the actual breach to Plaintiffs in contravention of

8  § 2924(1)(1)(C).[5]

9        California Civil Code §§ 2924-2924k govern the handling of non-judicial

10  foreclosures.  Under California law, a defaulted borrower is "required to allege tender of

11  the amount of [the lender's] secured indebtedness in order to maintain any cause of

12  action for irregularity in the sale procedure."  Abdallah v. United States Saving Bank,

13  43 Cal. App. 4th 1101, 1109 (1996).  The tender requirement prevents "a court from

14  uselessly setting aside a foreclosure sale on a technical ground when the party making

15  the challenge has not established his ability to purchase the property."  Magdaleno v.

16  Indymac Bancorp, Inc., 853 F. Supp. 2d 983, 991 (E.D. Cal. 2001).  Thus, "an action to

17  set aside a foreclosure sale, unaccompanied by an offer to redeem [tender], would not

18  state a cause of action which a court of equity recognizes."  Karlsen v. Am. Sav. & Loan

19  Ass'n, 15 Cal. App. 3d 112, 117 (1981).

20        While it is uncontroverted that Plaintiffs have made no tender of their

21  indebtedness on the subject property, they argue that they are not required to do so if a

22  foreclosure sale has not yet taken place.  The Complaint is silent as to whether any such

23  sale of the subject property has occurred.  Although the requirement may be more

24  typically encountered under circumstances where a completed foreclosure sale is being

25  challenged, the case law is not as restrictive as Plaintiffs would suggest.  The tender

26  requirement in fact extends to any claim "implicitly integrated with the foreclosure, and

27        [5] The statutory language provides that upon breach of a mortgage application, foreclosure shall
not occur until a Notice of Default has been issued "setting forth the nature of each breach actually known

28  to the beneficiary . . . ."

1    such integration is present if a lawsuit challenges and/or seeks damages relating to any

2    aspect of the foreclosure process."  Abdallah, 43 Cal. App. 4th at 1109.

3         The authority Plaintiffs cite in support of their proposition that tender is not

4    required is inapposite.  In Intengan v. BAC Home Loans Servicing, LP, 214 Cal. App. 4th

5    1047 (2013), the court dispensed with the tender requirement only because the lender or

6    servicer had not complied with explicit statutory conditions precedent to a foreclosure,

7    as set forth in California Civil Code § 2923.5.  The second case cited by Plaintiffs, Pfeifer

8    v. Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1280 (2012), similarly

9    dispenses with tender where the servicer failed to follow specific HUD pre-foreclosure

10   regulations.

11        Here, aside from the violation of the wrongful foreclosure statute itself, no

12   predicate statutory breaches have been identified by Plaintiffs in the currently operative

13   Complaint.  Absent special circumstances like those confronted in Intengan and Pfeifer,

14   which have not been alleged here, the usual rule requiring tender appears to apply, even

15   if a foreclosure sale has not yet occurred.  See Sipe v. McKenna, 88 Cal. App. 2d 1001,

16   1006 (1948) ("A party may not, without payment of the debt, enjoin a sale by a trustee

17   under a power conferred by a deed of trust.").

18        In the absence of tender or any facts which excuse it, Plaintiffs' Fifth Cause of

19   Action fails and thus BANA's Motion to Dismiss that claim is granted.

20        **E.  Unfair Competition Law Claims**

21        Under California's Unfair Competition Law ("UCL"), any person or entity that has

22   engaged "in unfair competition may be enjoined in any court of competent jurisdiction."

23   Cal. Bus. & Prof. Code §§ 17201, 17203.  "Unfair competition" includes "any unlawful,

24   unfair or fraudulent business act or practice."  Id. at § 17200.  A plaintiff alleging unfair

25   business practices under § 17200 "must state with particularity the facts supporting the

26   statutory elements of the violation."  Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612,

27   619 (1993).

28   ///

1    While Plaintiffs' complaint purports to premise their UCL violations under all three

2  components of the statute (Compl., ¶ 89), their Opposition points only to § 17200's

3  "fraudulent" and "unfair" variants.   To state a claim under the "fraudulent" prong of the

4  UCL, "it is necessary only to show that members of the public are likely to be deceived"

5  by the business practice.  In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009).  While no

6  definitive test has been established to determine whether a business practice is "unfair"

7  in consumer cases, three tests for unfairness have been developed in the consumer

8  context.  First, a business practice is unfair where the practice implicates a public policy

9  that is "tethered to specific constitutional, statutory or regulatory provisions."  Harmon v.

10  Hilton Group, No. C-11-03677 JCS, 2011 WL 5914004, at *8 (N.D. Cal. Nov. 28, 2011).

11  The second test "determine[s] whether the alleged business practice is immoral,

12  unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires

13  the court to weigh the utility of the defendant's conduct against the gravity of the harm to

14  the alleged victim."  Id.  Finally, under the third test, "unfair" conduct requires that "(1) the

15  consumer injury must be substantial; (2) the injury must not be outweighed by any

16  countervailing benefits to consumers or competition; and (3) it must be an injury that

17  consumers themselves could not reasonably have avoided."  Davis v. Ford Motor Credit

18  Co., 179 Cal. App. 4th 581, 597-98 (2009).

19    Even before reaching the merits of Plaintiffs' UCL claims, the Court must address

20  BANA's claim that Plaintiffs lack standing to assert any claim in the first instance

21  because of their failure to allege any injury or damages as a result of the alleged unfair

22  practices.  See R & B Auto Ctr., Inc. v. Farmers Group Inc., 140 Cal. App. 4th 327, 360

23  (2006) (plaintiff must have suffered monetary or property loss to recover under the UCL).

24  While BANA argues that Plaintiffs have not alleged any actual harm, their Complaint

25  belies that assertion.  Plaintiffs allege losses through overcharges and late fees,

26  destruction of credit, and fees and costs incurred in attempting to save their home, as

27  well as associated severe emotional distress.   Compl., ¶¶ 49, 65, 74, 86.  As indicated

28  ///

1   above in discussing Plaintiffs' fraud based claims, these allegations adequately set forth

2   the requirement that damages be sustained.

3          With respect to whether BANA engaged in acts of unfair competition, the Court

4   first turns to whether Plaintiffs have stated a viable claim under the "fraudulent"

5   component of the statute.  The Court has already concluded that Plaintiffs have

6   adequately pled claims sounding in fraud, and have done so with the requisite

7   particularity.  Those conclusions equally support Plaintiffs' UCL claims to the extent they

8   are premised on fraudulent conduct.

9          Nor can BANA claim that its alleged conduct was not "unfair" for UCL purposes.

10  Assuming the truth of Plaintiffs' allegations, which the Court must do in the context of a

11  motion to dismiss, Plaintiffs have certainly identified "unfair" conduct by BANA.  BANA

12  representatives made multiple representations that Plaintiffs should apply for loan

13  modification relief and one representative stated that Plaintiff would even obtain such

14  relief so long as the necessary documentation was submitted.  This was done in spite of

15  the fact that BANA apparently had no authority as the loan servicer to grant such relief.

16  To make matters worse, BANA representatives allegedly told Plaintiffs to disregard

17  written notifications from BANA denying modification and to continue with the application

18  process.  Finally, according to Plaintiffs, BANA denied their request to participate in loan

19  modification relief administered by Keep Your Home California and insisted that Plaintiffs

20  resubmit a modification application to BANA.  Despite Plaintiffs compliance, BANA

21  placed the loan into foreclosure several months later.  Clearly, these allegations

22  potentially implicate "unfair" conduct on numerous levels, either as oppressive, unethical,

23  or unscrupulous conduct.

24         Moreover, BANA has not attempted to identify any countervailing benefit or utility

25  to other consumers occasioned by its conduct.   Additionally, since the process involved

26  the loss of Plaintiffs' home as well as the potential destruction of their credit and

27  numerous other costs, the injury posed is potentially a substantial one.  Finally, Plaintiffs

28  had allegedly been paying their mortgage before BANA representatives told them, on

17

1    several occasions, to stop doing so in order to qualify for a loan modification.

2    Consequently, Plaintiffs' Sixth Cause of Action survives BANA's challenge.

3          **F.   Remaining Defendants: Nationstar and U.S. Bank**

4          As previously indicated, BANA's Motion to Dismiss is not the only dismissal

5    request before the Court.  The remaining named defendants, with the exception of Sage

6    Point Lender Services LLC, have also moved to dismiss.  As indicated in footnote 2

7    above, these defendants include Nationstar Mortgage, as well as U.S. Bank in its

8    capacity as a trustee.  Plaintiffs assert causes of action against these defendants for

9    fraud, negligent misrepresentation, wrongful foreclosure, and UCL violations.

10         In moving to dismiss, Nationstar and U.S. Bank predominantly claim that Plaintiffs

11   have pled insufficient facts to state any viable claim against them.  Plaintiffs allege that

12   on or about November 1, 2013, BANA transferred the servicing of Plaintiffs' loan to

13   Nationstar, and Nationstar "therefore acquired the servicing rights and beneficial interest

14   in Plaintiffs' mortgage thereby assuming all the liabilities of its predecessor, Defendant

15   BANA, with regard to Plaintiffs' loan."  Compl., ¶ 30.  Otherwise, with regard to

16   Nationstar, Plaintiffs state only that it subsequently sent Plaintiffs a letter assigning a

17   servicing representative, Jen Hansen, as Plaintiffs' single point of contract in assisting

18   Plaintiffs with any available modification options.  While Plaintiffs indicate that Ms.

19   Hansen asked Plaintiffs to submit a new loan modification application to Nationstar, and

20   Plaintiffs complied, Plaintiffs do not allege that Nationstar ever made any commitment to

21   modify.  Instead, on February 26, 2014, Plaintiffs received a letter from Nationstar

22   denying Plaintiffs' loan modification on grounds that the owner of Plaintiffs' loan declined

23   to approve a modification.

24         With respect to U.S Bank, the only factual allegation made is that they are "the

25   current investor on Plaintiffs' loan."  Id. at ¶ 6.  Otherwise, Plaintiffs offer only the

26   conclusory allegation that "U.S. Bank aided and abetted Defendants BANA and

27   Nationstar by encouraging and incentivizing [their] fraudulent conduct."  Id. at ¶ 48.

28   ///

1    The sufficiency of the allegations against Nationstar and U.S. Bank are, for the

2 most part, subject to a heightened pleading standard under Rule 9(b).  The fraud and

3 negligent misrepresentation claims are specifically predicated on fraudulent conduct,

4 and any allegations that "sound in fraud must be pled with particularity."  Vess, 317 F.3d

5 at 1103-05.  Additionally, unfair business practices under the UCL must be stated with

6 particularity.  Khoury, 14 Cal. App. 4th at 619.

7    Here, there are virtually no particularized allegations against either Nationstar or

8 U.S. Bank.  Plaintiffs allege that Nationstar only asked Plaintiffs to submit a loan

9 modification and that the application was subsequently denied.  Otherwise, Plaintiffs

10 make only the conclusory allegation that Nationstar "acquired all of the liabilities" of

11 BANA when it obtained the rights to Plaintiffs' mortgage.  The facts alleged against U.S.

12 Bank are even more vague.  The Complaint states only that U.S. Bank aided and

13 abetted BANA and Nationstar by encouraging its allegedly fraudulent conduct.

14 Absolutely no factual particulars to back up that statement are offered.

15    When suing multiple defendants for fraud-based conduct, a Plaintiff "must provide

16 each and every defendant with enough information to enable them 'to know what

17 misrepresentations are attributable to them and what fraudulent conduct they are

18 charged with.'"  Pegasus Holdings v. Veterinary Ctrs. Of Am., Inc., 38 F. Supp. 2d 1158,

19 1163 (C.D. Cal. 1998), quoting In re Worlds of Wonder Sec. Litig., 694 F. Supp. 1427,

20 1433 (N.D. Cal. 1988).  Here, Plaintiffs have pled no facts which show how Nationstar

21 engaged in fraud.  A simple suggestion that Plaintiffs submit a loan modification request,

22 and the fact that request was later denied, does not suffice.  Also, Plaintiffs cannot use

23 their allegations against BANA to satisfy the particularity for additional claims against

24 Nationstar.  A fraud claim against one entity does not generally lie for statements made

25 by another.  Unterberger v. Red Bull N. Am., Inc., 162 Cal. App. 4th 414, 420-22 (2008).

26 Moreover, California law does not normally allow fraud based claims against successors-

27 in-interest based on the acts or omissions of a predecessor.  See Franklin v. USX Corp.,

28 87 Cal. App. 4th 615, 621 (2001).  Consequently, Plaintiffs' claims against Nationstar for

1  fraud, negligent misrepresentation, and for violations of California's UCL fail.  The failure

2  of these claims against U.S. Bank is even more apparent, since there are virtually no

3  allegations levied against U.S. Bank other than that it "aided and abetted" the claimed

4  misdeeds of BANA and Nationstar.  Without supporting facts, those allegations are also

5  plainly inadequate.

6       The only remaining claim asserted against the Nationstar and U.S. Bank, for

7  wrongful foreclosure, fails for the same reason the claim as the against BANA:  there is

8  no allegation of tender or any facts which suggest that tender should be excused.

9       Accordingly, the second Motion to Dismiss the claims against Nationstar and U.S.

10  Bank is granted in its entirety.

11

12                                    **CONCLUSION**

13

14       For all the foregoing reasons, Defendants' Motions to Dismiss are adjudicated as

15  follows:[6]

16       1.   The Motion to Dismiss brought by Defendant BANA  (ECF No. 4) is DENIED

17            with respect to the First, Second, Third and Sixth Causes of Action and

18            GRANTED with leave to amend as to the Fourth and Fifth Causes of Action;

19       2.   The Motion to Dismiss (ECF No. 7) brought by the Nationstar Defendants is

20            GRANTED with leave to amend.

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  ───────────────────
    [6] The Court notes that Defendants have filed requests in both motions asking the Court to
    judicially notice various mortgage documents which, with one exception, were filed with the Sutter County
28  Recorder's Office.  Those requests, made pursuant to Federal Rule of Evidence 201, were not opposed
    and are GRANTED.

3. Plaintiffs may file an amended complaint, should they choose to do so, not later than twenty (20) days following the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated:  August 19, 2015

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT