UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY J. TRIGUEIRO, an individual, and LINDA S. TRIGUEIRO, an individual,<br><br>            Plaintiffs,<br><br>     v.<br><br>BANK OF AMERICA, N.A.,  a national banking association and the successor in interest to BACK Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP; NATIONSTAR MORTGAGE LLC,  a business entity; U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO WACHOVIA BANK, N.A., AS TRUSTEE FOR THE CERTIFICATE-HOLDERS OF BANK OF AMERICA FUNDING CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-F, a business entity; SAGE POINT LENDER SERVICES, LLC,  a business entity; and DOES 1-50, inclusive,<br><br>            Defendants. | No.  2:14-cv-02556-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs Larry J. Trigueiro and Linda S. Trigueiro ("Plaintiffs")  seek redress from various entities servicing the mortgage on their home

1

located at 2920 Butte Meadows Court, Yuba City, California ("the subject property"). Plaintiffs claim a variety of improprieties in the servicing of their mortgage and the subsequent commencement of foreclosure proceedings on the subject property. Presently before the Court are two motions to dismiss portions of Plaintiffs' First Amended Complaint ("FAC"). The first Motion to Dismiss, made on behalf of Defendant Bank of America, N.A. ("BANA"), asserts that the FAC's Fourth Cause of Action for intentional infliction of emotional distress should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] because it fails to state a claim upon which relief can be granted. The second Motion to Dismiss is made by the remaining Defendants[2] with the exception of Sage Point Lender Services, LLC. As set forth below, both Motions to Dismiss are GRANTED.[3]

## BACKGROUND[4]

Plaintiffs purchased the subject property on June 28, 2005, after obtaining financing in the amount of $280,000 from BANA. In order to effectuate the purchase, Plaintiffs executed both a Promissory Note and Deed of Trust. In January 2011, after Mr. Trigueiro lost his job, Plaintiffs called BANA to request mortgage assistance on their home loan. Specifically, they inquired as to whether they could make partial payments for a period of one year until Larry Trigueiro was reemployed. Plaintiffs claimed they were told that BANA was unable to make such an arrangement as it was only the loan

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Those Defendants include Nationwide Mortgage LLC ("Nationstar"), as well as U.S. Bank, N.A., as Trustee ("U.S. Bank").

[3] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[4] This factual background is drawn directly from the allegations contained in Plaintiffs' FAC (ECF No. 24).

servicer and not the investor on their mortgage.  Nonetheless, Plaintiffs allege that about a month later, on February 18, 2011, they received a letter from BANA inviting them to apply for a loan modification with BANA in order to avoid foreclosure.   Plaintiffs claim that they were still current on their loan and had made every payment since the loan originated in 2005.

Later in February 2011, Plaintiffs claimed they spoke with an authorized representative of BANA who identified himself as "Eloy."  Eloy told Plaintiffs that the easiest way for Plaintiffs to get mortgage assistance would be to miss monthly payments on their loans.  Plaintiffs allegedly responded that they did not want to default and instead simply wanted help in meeting their mortgage obligations.  According to Plaintiffs, Eloy said that that by defaulting on the loan Plaintiffs would show the investor that they truly needed mortgage assistance.

Not wanting to default, Plaintiffs used a credit card to make their monthly mortgage statements for a time, until the credit card payments themselves became intolerable.  Subsequently, on or about May 31, 2011, Plaintiffs called BANA to request a loan modification.  BANA's authorized representative from the Hardship Modification Department, an individual who identified himself as "Matt," informed Plaintiffs that a loan modification was available for Plaintiffs' loan.  Again, however, Plaintiffs were told they had to be delinquent on their loan in order to obtain a modification.  Plaintiffs claim they were "specifically instructed to default on their monthly mortgage payments in order to qualify for the loan modification" and followed that directive in order to qualify for assistance.  FAC, ¶ 14.

Once Plaintiffs withheld their monthly mortgage payments, they state they were contacted by a BANA representative named Brenda Weathers.  Ms. Weathers reiterated that modification was an available option for Plaintiffs and told them she would send a loan modification review package.  She allegedly provided "detailed instruction as to how this package should be completed and advised Plaintiffs that if they followed BANA's

///

3

instructions and completed the package as requested, Plaintiffs would receive a loan modification." Id. at ¶ 15.

Between May 2011 and October 2012, Plaintiffs state they were in an active loan modification review with BANA. During that period, they claim they were continuously asked to submit and re-submit numerous documents and financial information and aver that they complied with BANA's requests in that regard. Then, on October 29, 2012, Plaintiffs received a letter from BANA's Home Loan Team that stated in pertinent part:

> You are not eligible for a Home Affordable Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan under the Home Affordable Modification Program.

Id. at ¶ 18.

After receiving the letter, Plaintiffs called BANA and again spoke to Brenda Weathers. She told them that despite the contents of the October 29, 2012 letter, their loan could in fact be modified and that they should continue to seek modification through BANA. Shortly thereafter, Plaintiffs received another letter from Ms. Weathers requesting additional documents, which Plaintiffs provided. By additional correspondence on or around October 31, 2012, Weathers told Plaintiffs that once BANA's loan modification review was completed, BANA would contact them about the type of assistance they qualified for. On November 5, 2012, Ms. Weathers assured Plaintiffs that no additional documents were required. However, on November 30, 2012, Plaintiffs received a letter from another member of BANA's Home Loan Team, Richard Bryant, stating that Plaintiffs needed to fax more documentation

On January 3, 2013, Plaintiffs received a letter from Mr. Bryant that was nearly identical to BANA's previous correspondence of October 29, 2012. Mr. Bryant's letter advised Plaintiffs that they were not eligible for loan modification because BANA lacked the contractual authority to modify Plaintiffs' loan. By this time, Plaintiffs were substantially behind on their mortgage payments. Less than a week later, on January 8, 2013, BANA recorded an Assignment of Deed of Trust assigning all beneficial interest

under the subject Deed of Trust to Defendant U.S. Bank.  BANA remained the loan servicer.

After applying for another mortgage assistance program administered by Keep Your Home California, Plaintiffs claim they were told they were conditionally eligible for assistance of up to $25,000 but needed consent from the subject property's loan servicer, BANA, to proceed.  Despite the two previous rejections they received, Plaintiffs claim they were told to resubmit yet another loan modification application to BANA since it would not consent to any potential assistance from Keep Your Home California.  Plaintiffs submitted that application to BANA in June of 2013.

On or about October 17, 2013, Plaintiffs received a letter from BANA advising them that their loan was in foreclosure and that they had until October 31, 2013, to reinstate the loan by paying $27,706.20 to BANA.  Then, on or about November 1, 2013, Defendant transferred its servicing of Plaintiffs' loan to Defendant Nationstar, with Nationstar thereby acquiring all servicing rights and beneficial interest in the subject property.  Nationstar subsequently caused a Notice of Trustee's Sale to be recorded on the subject property on November 4, 2013.  See Nationstar's Request for Judicial Notice, Ex. F.[5]  On or about November 8, 2013, however, Nationstar representative Jen Hansen asked Plaintiffs to submit a new loan modification application.  Pending the results of that request, the foreclosure sale was cancelled and a Notice of Rescission of Trustee's Sale was recorded on December 11, 2013.  Id. at Ex. G.

Plaintiff's loan modification was ultimately denied by Nationstar on February 26, 2014.  The letter Plaintiffs received from Nationstar informed them that the owner of the loan declined to approve a modification based on its review of the loan modification request.  Plaintiffs' property was consequently placed back into active foreclosure, with responsibility for the foreclosure process being assigned to Defendant Sage Point.  On

---

[5] Both Motions include unopposed requests, pursuant to Federal Rule of Evidence 201, that the court judicially notice various documents either on grounds that said documents are referred to in Plaintiff's complaint but not attached, or on the basis that the documents constitute matters of public record whose authenticity can be readily determined.  Those Requests for Judicial Notice are GRANTED.

or about April 19, 2014, Plaintiffs were told by letter from Nationstar that their indebtedness on the subject property had increased to $42,815.26. Nonetheless, according to Nationstar, no subsequent Notice of Trustee's Sale has since been recorded and no Trustee's Sale of the subject property has occurred.

On September 8, 2014, Plaintiffs commenced this action in state court. Following its removal on diversity of citizenship grounds, both BANA and Nationstar/U.S. Bank filed Motions to Dismiss. BANA's Motion was denied with the exception of its challenges to the Fourth and Fifth Causes of Action, for Intentional Infliction of Emotional Distress ("IIED") and Wrongful Foreclosure. The Motion as to those claims was granted for failure to state a viable claim, with leave to amend. The second Motion to Dismiss was brought by Defendants Nationstar and U.S. Bank as to all claims asserted against those entities, again on grounds that the allegations were factually insufficient under Rule 12(b)(6). That Motion was also granted, with leave to amend.

On September 4, 2015, Plaintiffs filed their FAC and that pleading also spawned two Motions to Dismiss brought by BANA and by Nationstar/U.S. Bank and now before the Court. Plaintiffs do not reallege their Wrongful Foreclosure claim against BANA.[6] They do, however, persist in attempting to state a valid IIED claim, and BANA urges the Court to again reject that claim as insufficient. Moreover, Plaintiffs have abandoned the previous claims they alleged against Nationstar and U.S. Bank for fraud, negligent misrepresentation and Wrongful Foreclosure, as those claims have not been repled against Nationstar in the FAC.[7] Instead, Plaintiffs now charge Nationstar only with negligence and unlawful, unfair and and/or fraudulent business practices, in violation of

---

[6] Because Plaintiffs' FAC does not purport to state any Wrongful Foreclosure claim, BANA asks the Court to dismiss that claim without further leave to amend. No opposition was made to that request, which is accordingly granted.

[7] Plaintiffs have also not attempted to reallege any claim against U.S. Bank despite being afforded leave to do so. Although U.S. Bank continues to appear as a Defendant in the caption to the FAC and although the FAC retains a paragraph describing U.S. Bank's business entity status (FAC, ¶ 5), there are otherwise no charging allegations against it and none of the five causes of action purport to include U.S. Bank as a party. U.S. Bank accordingly requests that it now be dismissed with prejudice, and Plaintiffs have not opposed that request. U.S. Bank's Motion will therefore be GRANTED.

California's Unfair Competition Law ("UCL") as codified in Business and Professions Code § 17200, et seq.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. Intentional Infliction of Emotional Distress Against BANA

In order to state a legally cognizable claim for intentional infliction of emotional distress ("IIED"), a plaintiff must identify facts demonstrating that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless

disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 744-45 (2002).  The conduct at issue "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Trerice v. Blue Cross of Cal., 209 Cal. App. 3d 878, 883 (1989).

BANA's current challenge to Plaintiffs' IIED claim, like its original Motion, is premised on an argument that a mortgage-related dispute is founded on "purely economic activity" that cannot as a matter of law give rise to severe emotional distress. Montgomery v. PNC Bank, N.A., 2012 WL 3670650 at *6 n.6 (N.D. Cal. Aug. 24, 2012). One court in this district has also found that the loan modification process and "the act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." See Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010).  A party's exercise of its contractual rights in this regard does not rise to the level of extreme or outrageous conduct. Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1125 (E.D. Cal. 2014).

In arguing that BANA's conduct can nonetheless support a claim for IIED, Plaintiffs continue to rely primarily on an argument that allegedly instructing Plaintiffs to miss their monthly loan payments in order to seek a loan modification was "extreme and outrageous" when BANA "knew or should have known that it lacked the contractual authority to modify [Plaintiffs'] loan in the first place." FAC, ¶ 73. As BANA points out, however, these allegations are essentially the same as those pled in Plaintiffs' predecessor Complaint and already been rejected by this Court as insufficient. This Court has already held that, however misguided or incorrect BANA's advice may have been in this regard, particularly if its representatives indeed encouraged Plaintiffs to continue to apply for loan modification relief that was in fact unavailable, the facts identified by Plaintiffs still do not rise to the level of outrageous conduct entitling them to

seek damages under an IIED claim. At the end of the day, the loan modification process here constitutes a purely economic activity not amenable to IIED as a matter of law. The fact that Plaintiffs claim they would have sought other avenues of relief had they been correctly informed of BANA's limitation does not change this analysis. Nor does the fact that the FAC now alleges that Mr. Triguiero died of a heart attack on January 19, 2015, during the pendency of this litigation, alter the result. Plaintiff's allegation that ongoing efforts to foreclose on the family home "contributed to [Mr. Triguiero's] early death (Id. at ¶ 38) when BANA's role in servicing Plaintiffs' loan ended on or about November 1, 2013, well over a year before his demise is conclusory and unsupported.

Because Plaintiffs have still failed to state a viable IIED claim despite being afforded another opportunity to do so, the Court now dismisses Plaintiff's Fourth Cause of Action without further leave to amend.

### B. Negligence Claim against Nationstar

As indicated above, Plaintiffs' FAC abandons the claims previously pled against Nationstar, with the exception of the California UCL claim discussed below. Because the UCL claim depends on the viability of Plaintiffs' negligence cause of action against Nationstar under the circumstances of this case, the negligence claim will be addressed first.

A viable negligence claim entails the following elements: "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (1998). Whether an actionable duty of care is present becomes the threshold inquiry in assessing any negligence claim. Bily v. Arthur Young & Co., 3 Cal. 4th 370, 397 (1992). Generally, a lender does not owe a duty of care to a borrower, and Nationstar argues the general handling of a loan application does not justify a departure from that general rule. See Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 (1991). Insofar as loan modification constitutes a renegotiation of loan terms, it "falls squarely within the scope of a lending institution's conventional role as a

lender of money." Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67 (2013). According to Nationstar, its loan modification activities in this case qualify under this standard.

However, although it is correct that a lender owes no duty of care to offer, consider, or approve a loan modification request (see id. at 68), there is authority that once it agrees to consider a modification, it owes the potential borrower a duty to exercise reasonable care in its review of a loan modification application. Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 948 (2014). As Alvarez recognized, the factors employed in considering whether a duty exists "clearly weigh in favor of a duty" in this instance since it is "entirely foreseeable that failure to timely and carefully process the loan modification application could result in significant harm . . . ." Id. Consequently, in determining whether Plaintiffs here can show that Nationstar breached its duty to exercise reasonable care in processing Plaintiffs' loan modification request, the Court must consider whether Plaintiffs have identified any facts showing that Nationstar processed that request in such a way to depart from the general rule that no duty of care is owed.

Plaintiffs' FAC alleges that on or about November 1, 2013, BANA transferred the servicing of Plaintiffs' loan to Nationstar, and Nationstar "therefore acquired the servicing rights and beneficial interest in Plaintiffs' mortgage thereby assuming all the liabilities of its predecessor, Defendant BANA, with regard to Plaintiffs' loan." FAC, ¶ 30. Otherwise, with regard to Nationstar, Plaintiffs state only that it subsequently sent Plaintiffs a letter assigning a servicing representative, Jen Hansen, as Plaintiffs' single point of contact in assisting Plaintiffs with any available modification options. While Plaintiffs indicate that Ms. Hansen asked Plaintiffs to submit a new loan modification application to Nationstar, and Plaintiffs complied, Plaintiffs do not allege that Nationstar ever made any commitment to modify.[8]  Nonetheless, as indicated above, pending the results of

---

[8] To the contrary, Plaintiffs' FAC states only that Ms. Hansen encouraged them to submit a new loan modification application as "various workout options . . may be available." FAC, ¶ 32.

Plaintiffs' modification request, the foreclosure sale was cancelled and a Notice of Rescission of Trustee's Sale was recorded on December 11, 2013.  See Nationstar's Request for Judicial Notice, Ex. G.  The sale was accordingly cancelled more than two months before Nationstar advised Plaintiffs in writing on or about February 26, 2014 that their loan modification request was denied.  Moreover, while the exact date Plaintiffs' loan modification was submitted is not clear from the FAC, since Nationstar did not even assume handling of Plaintiffs' loan until November 2013, and since its decision on the loan modification was forthcoming in February of 2014, the entire process did not take more than a couple of months.

These facts do not indicate anything to suggest that Nationstar acted tortiously in its handling of Plaintiffs' loan modification request.  Plaintiffs were already delinquent on their loan payments, and unlike BANA, there are no facts suggesting that Nationstar told Plaintiffs to quit paying their loan in order to qualify for modification, no alleged assurances that a loan modification was forthcoming, nothing approaching the year and a half that Plaintiffs allege they were in active loan modification review with BANA, and no repeated requests to resubmit loan modification requests after Plaintiffs' initial request had already been denied.  Consequently, in the absence of any facts suggesting that Nationstar breached any duty owed to Plaintiffs, there is nothing giving rise to any liability on Nationstar's part sounding in negligence.  Therefore, Nationstar's Motion to Dismiss the Third Cause of Action will be GRANTED.  Because Plaintiffs have identified no facts to suggest that they can state a viable negligence claim against Nationstar, and since Plaintiffs have already been permitted to amend their complaint once in order to do so, no further leave to amend will be permitted.

**C.  UCL Claim against Nationstar**

Under the UCL, any person or entity that has engaged "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice." Id. at § 17200.   A plaintiff alleging unfair business practices under § 17200

12

"must state with particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

Plaintiffs' FAC makes it clear that its claim for UCL violations "borrows violations from other statutes and laws" such that Plaintiffs' preceding causes of actions (which in Nationstar's case is limited to a single claim for negligence) "constitute [the], unfair and/or fraudulent business practices" necessary to state a cognizable UCL claim. FAC, ¶¶ 80-81. Therefore, by Plaintiffs' own definition, their UCL claim is derivative of its previously asserted claims. With respect to Nationstar, the only such predicate claim is Plaintiffs' negligence cause of action, with the viability of the UCL cause of action, therefore depending on whether Plaintiffs have stated a cognizable negligence claim. See Krantz v. BT Visual Images, LLC, 89 Cal. App. 4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action); People v. Duz-Mor Diagnostic Lab., Inc., 68 Cal. App. 4th 654, 673 (1998) (a defense to the underlying offense is a defense under the UCL); see also Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing Section 17200 claim where underlying negligence and fraud claims were insufficient ).

Because, as demonstrated above, Plaintiffs' underlying negligence cause of action against Nationstar fails, Plaintiffs' derivative UCL claim against Nationstar is also not viable. Therefore, Nationstar's Motion to Dismiss the Fifth Cause of Action will also be GRANTED.

## CONCLUSION

For all the foregoing reasons, Defendants' Motions to Dismiss are adjudicated as follows:

1. The Motion to Dismiss brought by Defendant BANA (ECF No. 26) is GRANTED. Plaintiffs' Fourth Cause of Action, for Intentional Infliction of Emotional Distress, is dismissed without further leave to amend;

2. The Motion to Dismiss (ECF No. 25) brought by the Nationstar Defendants is also GRANTED without leave to amend. Since both causes of action pled against Nationstar fail, this lawsuit is hereby dismissed as to Nationstar.

3. The Motion to Dismiss (ECF No. 26) as to Defendant U.S. Bank is also GRANTED in the absence of any charging allegations against U.S. Bank in the FAC, with this lawsuit dismissed as to U.S. Bank;

4. Since Plaintiffs have not attempted to state any claim for Wrongful Foreclosure in their FAC despite being afforded leave to do so, that cause of action is dismissed, with prejudice.

IT IS SO ORDERED.

Dated: May 19, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE